# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

CAMERON BRYAN DODD,

  Plaintiff,

vs.

BRIAN FOSTER, et al.,

  Defendants.

No. 24-CV-42-CJW-MAR

**ORDER**

———————————————

  Defendants' motion for summary judgment is before the Court. (Doc. 22). Defendants filed a statement of material facts and appendix in support of their motion. (Docs. 24-1 & 24-2). Plaintiff filed a resistance, an objection to defendants' statement of material facts, and exhibits. (Docs. 26, 26-1, 26-2). For the following reasons, the Court **grants** defendants' motion.

## I.  BACKGROUND

  The Court previously summarized plaintiff's allegations in its initial review order. (Doc. 5, at 5–6). Plaintiff was an inmate at the Anamosa State Penitentiary ("ASP"). (Doc. 1, at 3); (Doc. 24-1, at 1 (plaintiff is now at Fort Dodge Correctional Facility)). Plaintiff has Type 1 diabetes. (Docs. 24-1, at 1–2; Doc., 26-1, at 2); *see also* (Doc. 24-2, at 5 (listing Type 1 as diagnosed on 1/22/2026 and Type 2 as "Resolved")). He uses a continuous glucose monitor. (Doc. 26, at 7). On April 19, 2024, plaintiff filed a complaint alleging that defendants violated his Eighth Amendment rights through deliberate indifference to his medical needs. (Doc. 1-1, at 4). He stated that they denied him "reasonably adequate medical care for ongoing chronic health issues and refused to remedy complaint of these issues." (*Id.*, at 6-8).

More specifically, plaintiff details two incidents on January 31, 2024, and February 10, 2024, when he alerted ASP staff of his elevated blood sugar levels according to his glucose monitor early in the morning and requested medical care or to be taken to a hospital. (*Id.*, at 9-10). Plaintiff alleges that blood sugar levels over 150 require intervention. (*Id.*, at 9). On January 31, 2024, plaintiff alerted medical staff at 2:40 a.m. that his glucose was at 371, but that he was told no one could administer proper care until 6:00 a.m. (*Id.*). A nurse gave plaintiff insulin at 6:21 a.m. (Doc. 26-2, at 79). On February 10, 2024, plaintiff alerted medical staff at 1:52 a.m. that his glucose was 323. (Doc. 1-1, at 9). ASP staff responded to the alert at 3:53 a.m., and a nurse came to his cell with insulin at 5:23 a.m. (*Id.*, at 10). Plaintiff states that "[t]his scenario occur[r]ed multiple times between 1-31-24 and 4-1-2024 where we lacked the proper/needed medical staff. Reasonable remedies were denied. Harmful policies were refused to be revised." (*Id.*, at 10). Plaintiff asserts physical and mental injuries from his uncontrolled blood sugar levels. (*Id.*, at 13).

Plaintiff submitted a grievance complaint regarding the January 31, 2024 incident on February 5, 2024. (Doc. 26-2, at 2). In his complaint he stated that it was "a continuous issue with failure to have staff" and that "we have to change policy on how or who administers" his insulin. (*Id.*) The warden only partially sustained plaintiff's complaint. (Doc. 24-2, at 104). In the written grievance response, the warden explained to plaintiff, "You did not show up to one insulin line on 01/31/24 which will have an impact on your blood sugars throughout the evening. Insulin will remain available at scheduled times. Medical staff are available 24/7." (Doc. 26-2, at 3). Plaintiff appealed through the Iowa Department of Corrections ("IDOC"). (*Id.*, at 4–8). In his appeal, he stated, "twice now I was denied the medical care I need[.]" (*Id.*, at 7). The IDOC warden partially sustained the appeal, and wrote that "[s]upervisors are still able to contact the on-call medical provider as well as needed." (*Id.*, at 9).

In turn, defendants state that during January through April 2024, "a national nursing shortage caused staffing shortfalls at ASP" and that "ASP experienced significant challenges recruiting and retaining nursing staff, particularly for third-shift positions (approximately 2200-0500)" or 10:00 p.m. to 5:00 a.m. (Doc. 24-1, at 3). "[O]n April 12, 2024, the third-shift returned to full-time coverage." (*Id.*, at 5). Defendants' medication administration records indicate that plaintiff received three kinds of insulin injections at four times each day, the earliest at 6:30 a.m. and the latest at 8:00 p.m. (Doc. 24-2, at 7). On January 31, 2024, plaintiff received all four doses of insulin. (*Id.*). On February 10, 2024, plaintiff did not receive his dose at 8:00 p.m. (*Id.*, at 10). Defendants submitted plaintiff's medication administration record for all of January 2024 through February 2026, which showed plaintiff received multiple scheduled insulin injections daily. (*Id.*, at 7–103). The medication administration record also showed plaintiff regularly refused or did not show for insulin injections. (*Id.*). Additionally, the administrator of nursing for IDOC stated that she proposed plaintiff transfer to a different facility that had twenty-four-hour nursing coverage, but that plaintiff "verbally declined the transfer opportunity and indicated that he wished to remain at his current facility because he did not want to lose his employment assignment with Iowa Prison Industries (IPI)." (Doc. 24-2, at 109). According to defendants, medical staff were available by phone at all times. (Doc. 26-2, at 82).

On June 22, 2026, defendants moved for summary judgment. (Doc. 22). In support of their motion, they filed a statement of material facts and appendix. (Docs. 24, 24-1, 24-2). On July 13, 2026, plaintiff filed a resistance. (Doc. 26). He also filed an objection to defendants' statement of material facts and filed exhibits. (Docs. 26-1 & 26-2). In his exhibits, plaintiff included nurse encounter notes from incidents of high glucose on March 28, 2024, May 29, 2024, June 7, 2024, August 25, 2024, and December 28, 2024. (Doc. 26-2, at 35, 39–40, 45, 56). In each of those additional

incidents, the nurse encounter notes detailed that IDOC staff administered insulin on those dates.  (*Id*.).

## II.    *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

A fact is "material" if it "might affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "An issue of material fact is genuine if it has a real basis in the record." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).  It is also genuine "when a reasonable jury could return a verdict for the nonmoving party on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (citing *Anderson*, 477 U.S. at 248) (internal quotation marks omitted).  Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of fact genuine.  In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 249 (citation and internal quotation marks omitted).

4

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex Corp.*, 477 U.S. at 323). The nonmovant plaintiff may not then simply point to allegations made in its complaint, but must identify and provide evidence of "specific facts creating a triable controversy." *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999) (internal quotation marks omitted). When considering a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In determining whether a genuine dispute of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Matsushita*, 475 U.S. at 587–88. *See also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather, a "court's function is to determine whether a dispute about a material fact is genuine[.]" *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996).

### III. ANALYSIS

Plaintiff brought his claim under Title 42, United States Code, Section 1983, thus the Court turns next to a review of that standard.

### A. Section 1983 Standard

Title 42, United States Code, Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, Section 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [Section] 1983'—for [Section] 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, Section 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (stating that Section 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means Section 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under Section 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### B. Deliberate Indifference to Medical Need Standard

Plaintiff claims deliberate indifference to his medical need by officials at ASP. Liability under Section 1983 may arise "for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v.*

6

*McCollan*, 443 U.S. 137, 146 (1979).[1]  An inadequate medical care claim under Section 1983 is governed by the Eighth Amendment deliberate-indifference standard.  *See Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014).

> Whether an official was deliberately indifferent requires both an objective and a subjective analysis.  *Scott v. Benson*, 742 F.3d 335, 339-40 (8th Cir. 2014).  Under the objective prong, [the plaintiff] must establish that he suffered from an objectively serious medical need.  *See id*. at 340.  To be objectively serious, a medical need must have been "diagnosed by a physician as requiring treatment" or must be "so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Id*. (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)).  Under the subjective prong, [the plaintiff] must show that an official "actually knew of but deliberately disregarded his serious medical need."  *Id*.  This showing requires a mental state "akin to criminal recklessness."  *Id*. (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)).  Consequently, [the plaintiff] must show "more than negligence, more even than gross negligence" to evince deliberate indifference.  [*Fourte v. Faulkner Cty*., 746 F.3d 384, 387 (8th Cir. 2014)] (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).

*Id*. at 1065; *accord Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 795 (8th Cir. 2006).

To establish an official's deliberate indifference to a serious medical need, a plaintiff must demonstrate: (1) a substantial risk of serious harm to the inmate existed and (2) the prison official knew of and disregarded that risk.  *Robinson v. Hager*, 292 F.3d 560, 563-64 (8th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)); *see also Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020).  As noted, to establish such a violation, plaintiff must establish both an objective and subjective component.  *Coleman*, 114 F.3d at 784.  An imperative prerequisite to success on this claim is that the officials "knew that the condition created an excessive risk to the inmate's health and

---

[1] The deliberate indifference standard applies to both inmates and pretrial detainees.  *Jackson*, 756 F.3d at 1065; *see also Barton v. Taber*, 908 F.3d 1119, 1123-24 (8th Cir. 2018).

then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). The result of that requirement is the necessary implication that negligent failure to diagnose and negligent treatment are insufficient to support a claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 105-06; *Bellecourt v. United States*, 994 F.2d 427, 431 (8th Cir. 1993); *see also Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 755 (5th Cir. 2001) ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.").

"It is well settled that an intentional delay in obtaining medical care for a prisoner who needs it may be a violation of the eighth amendment." *Ruark v. Drury,* 21 F.3d 213, 216 (8th Cir. 1994). However, "[t]he Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin,* 557 F.3d 628, 633 (8th Cir. 2009). "The Eighth Circuit Court of Appeals has been more likely to find delay constituted deliberate indifference for life-threatening ailments." *Celia v. N. Cent. Corr. Facility*, No. C13-3003-MWB, 2014 WL 2628676, at *7–8 (N.D. Iowa June 13, 2014), *report and recommendation adopted,* No. C13-3003-MWB, 2014 WL 4961450 (N.D. Iowa Oct. 3, 2014). It also considers relevant the length of delay and severity of the condition. *Id.* Moreover, "[w]hen an inmate alleges that a delay in medical treatment constituted a constitutional deprivation, 'the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment.'" *Coleman*, 114 F.3d at 784 (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)).

### C. Official Capacity Standard

Plaintiff sues defendants in their official capacities as warden, deputy warden, grievance officer, ASP resident doctor, and director of nursing. (Doc. 1, at 3–5, 7). "A suit against a public official in his official capacity is actually a suit against the entity for which the public official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th

Cir. 2006). To impose Section 1983 liability on a local government body, a plaintiff must show that an official policy or widespread practice caused a deprivation of a constitutional right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Corwin v: City of Independence, Mo.*, 829 F.3d 695, 699 (8th Cir. 2016) (citations omitted) ("Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise."). "A policy is a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Hayes v. Faulkner Cnty.*, 388 F.3d 669, 674 (8th Cir. 2004) (internal quotation marks and citation omitted). To constitute a custom the alleged unconstitutional conduct must be "continuing, widespread, and persistent." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

### D. Discussion

Defendants argue that summary judgment is appropriate here because "[p]laintiff fails to identify any written policy endorsing any unconstitutional conduct and does not identify any decision by a final policymaker that caused his alleged harm. Absent proof of an official policy causing the injury, the claim fails." (Doc. 24, at 8). In addition, defendants argue that "[p]laintiff presents no competent evidence of a pattern that is continuing, widespread, and persistent." (*Id.*). "Additionally, [p]laintiff submits no evidence of any injury suffered. On that basis alone, Plaintiff's official-capacity claims should be denied." (*Id.*, at 9). In response, plaintiff argues that some facts remain disputed, and thus summary judgment is premature. (Doc. 26, at 3).

As the Court stated in its initial review order, plaintiff's Type 1 diabetes diagnosis satisfies the objective prong of the Eighth Amendment standard. (Doc. 5, at 8). *See Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021) (identifying diabetes as a serious

9

medical need under Section 1983 deliberate indifference claim); *Hoff v. Joyce*, No. 1:22-CV-151, 2024 WL 4880621, at *3 (D.N.D. Nov. 25, 2024) ("there is no question that diabetes constitutes a serious medical need, satisfying the objective prong"); *Wallace v. Henry*, No. 6:22-CV-06043-BAB, 2023 WL 4422862, at *5 (W.D. Ark. July 10, 2023) ("Plaintiff's diagnosis of diabetes (of either Type) satisfies the objective prong of the medical deliberate indifference test."). Plaintiff, however, only provides documentation for two dates on which he did not receive insulin for three to four hours overnight. On neither January 31, 2024, nor February 10, 2024, is there a genuine dispute that plaintiff failed to receive his insulin as required. Rather, plaintiff has only shown that there was some delay in treatment. And he has not presented any evidence to show that any harm occurred as a result of the three to four hour wait or that the three to four hour wait created an excessive risk to his health that defendants disregarded. Rather, plaintiff regularly received insulin doses every three to four hours as part of his standard diabetes treatment. Such a lack of any concrete harm or change to treatment plan makes plaintiff's claim insufficient to survive summary judgment here on the Eighth Amendment claim.

In addition, plaintiff has not shown that any genuine dispute as to an official policy or widespread practice exists. In fact, defendants' documentation shows that over fourteen months, plaintiff repeatedly and consistently received insulin from IDOC staff in a timely manner, including overnight and despite plaintiff's instances of not showing for insulin administration or refusing insulin. Likewise, defendants showed that they offered multiple remedies to plaintiff which he refused. Plaintiff could have moved to a facility with twenty-four-hour medical staff on site; he refused. Plaintiff could have asked that a supervisor call the on-call medical provider overnight rather than wait for nursing staff to begin their shift; he refused. That plaintiff did not like the offered accommodations does not show an official policy or widespread practice of mistreating insulin-dependent inmates at the ASP. Likewise, that plaintiff did not like that he had to

10

wait three to four hours on two occasions before he was administered his insulin falls short of proving there was continuing, widespread, and persistent failure to treat his medical needs here. Lastly, defendants have shown they have now remedied any shortage of nursing staff at ASP and that any failure to offer immediate medical attention overnight due to the nursing staff shortage is now moot. Thus, the Court finds that summary judgment in favor of defendants is appropriate here on the official capacity claim as well.

## IV. CONCLUSION

For those reasons, the Court **grants** defendants' motion for summary judgment. Plaintiff's second motion to compel, (Doc. 19), and motion to conduct a deposition, (Doc. 20), are **denied as moot**. Judgment will issue in favor of defendants. The Clerk of Court is directed to close this case.

**IT IS SO ORDERED** this 22nd day of July, 2026.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa